## JONES PRESS, INC. v. MOTOR TRAVEL SERVICES, INC.

176 N. W. (2d) 87.

February 20, 1970—No. 42138.

*Gainsley & Gainsley* and *S. Harry Gainsley,* for appellant.

*Shanedling, Phillips, Gross & Aaron* and *Bert M. Gross,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

OTIS, JUSTICE.

This matter is before the court on a discretionary appeal pursuant to Rule 105, Rules of Civil Appellate Procedure, to test the constitutionality of the garnishment statutes which were in effect at the time this action was commenced, Minn. St. 1967, c. 571, more particularly, §§ 571.41, 571.42, and 571.60.[1]

Plaintiff seeks to recover $100,000 in damages, alleging a

---

[1] Minn. St. 1967, §§ 571.41, 571.42, and 571.60, provide as follows:

§ 571.41. "In any action in a court of record or justice court for the

wrongful conversion of lithographic negatives by defendant. In a prior action defendant sued Graphic Art Services, Inc., for interference with this defendant's peaceable possession of premises it was occupying in Minneapolis. Graphic counterclaimed for the

recovery of money, at the time of issuing the summons or at any time during the pendency of the action or after judgment therein against the defendant, a garnishee summons may be issued against any third person as provided in this chapter; except that in any action commenced in any court by an informer or other person pursuant to the provisions of United States Code, Title 31, Sections 231, 232, and 233, no garnishee summons may be issued hereunder unless the United States District Attorney, after entering appearance for the United States in such an action, issues the garnishee summons and garnishment so commenced shall be dismissed if the United States withdraws from or fails to prosecute the action as provided in United States Code, Title 31, Section 232. The plaintiff and defendant shall be so designated and the person against whom the summons issues shall be designated garnishee. Any individual, partnership or corporation within the state having property subject to garnishment may be named as garnishee."

§ 571.42. "Subdivision 1. Except as provided in sections 571.43 and 571.50, service of the garnishee summons upon the garnishee shall attach and bind, to respond to final judgment in the action, all personal property of the defendant in his possession or under his control and all indebtedness owing by him to the defendant at the time of such service.

"Subd. 2. All moneys and other personal property including such property of any kind due from or in the hands of an executor, administrator, receiver or trustee and all written evidences of indebtedness whether negotiable or not or under or overdue may be attached by garnishment, and money or any other thing due or belonging to the defendant may be attached by this process before it has become payable if its payment or delivery does not depend upon any contingency, but the garnishee shall not be compelled to pay or deliver the same before the time appointed by the contract."

§ 571.60. "If the defendant recovers judgment against the plaintiff, or sets up in his answer a counter-claim exceeding in amount the sum admitted in such answer to be due to the plaintiff, he may institute and prosecute garnishment under this chapter as if he were plaintiff. For the purposes of such proceedings he is to be considered as plaintiff, and the plaintiff as defendant, and his answer is deemed a complaint."

sum of $65,000. Plaintiff in the instant case and the defendant in the prior action are companies operated by one Lowell F. Jones. In the previous litigation, Graphic garnished this defendant's customers and impounded some $85,000 in accounts receivable. Faced with garnishments of up to $130,000, this defendant sought a restraining order to prohibit further garnishments but was denied relief. Thereupon, it secured a bond of $130,000 to release the garnishments. To do so, however, it was obliged to deposit $65,000 with a bonding company.

The present action was begun about 14 months later. Sixteen of defendant's customers were garnished at the time the suit was instituted. Twenty-two thousand dollars was impounded, and further garnishments up to the sum of $100,000 were threatened. To secure a bond for the release of the garnishments, defendant posted a letter of credit which exhausted its credit. Defendant alleges: "On this date, therefore, the use of $165,000.00 which defendant desperately needs is being denied it, and while the bonds remain in force, it has no source of money for its capital and current needs." Defendant moved the trial court for an order canceling and terminating the garnishment bond. This appeal is from a denial of that motion.

The issue presented is whether the decision of the United States Supreme Court in Sniadach v. Family Finance Corp. of Bay View, 395 U. S. 337, 89 S. Ct. 1820, 23 L. ed. (2d) 349, applies only to the garnishment of wages, or whether it is more broadly based on the principle that any taking without prior notice and an opportunity to be heard is a denial of due process in violation of the Fourteenth Amendment.

In Sniadach, the Supreme Court struck down a Wisconsin statute which permitted a plaintiff to commence garnishment proceedings prior to the service of the summons and complaint. There, the plaintiff garnished the defendant's wages. The court held that this process deprived the wage earner of "his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have, whether it be fraud or

otherwise." 395 U. S. 339, 89 S. Ct. 1821, 23 L. ed. (2d) 352. The court went on to say:

"* * * In this case the sole question is whether there has been a taking of property without that procedural due process that is required by the Fourteenth Amendment. * * * In the context of this case the question is whether the interim freezing of the wages without a chance to be heard violates procedural due process."

The decision stressed the fact that a prejudgment garnishment is "a taking which may impose tremendous hardship on wage earners with families to support" (395 U. S. 340, 89 S. Ct. 1822, 23 L. ed. [2d] 353) and concluded by holding that in the absence of notice and a prior hearing such taking violates the fundamental principles of due process.

The majority opinion in Sniadach lays great emphasis on the social problems created by indiscriminate garnishment of wages. It seeks to distinguish the rule governing attachments set forth in McKay v. McInnes, 279 U. S. 820, 49 S. Ct. 344, 73 L. ed. 975, and the extraordinary situations dealt with in Ownbey v. Morgan, 256 U. S. 94, 41 S. Ct. 433, 65 L. ed. 837, 17 A. L. R. 873; Coffin Bros. & Co. v. Bennett, 277 U. S. 29, 48 S. Ct. 422, 72 L. ed. 768; Fahey v. Mallonee, 332 U. S. 245, 67 S. Ct. 1552, 91 L. ed. 2030; and Ewing v. Mytinger & Casselberry, Inc. 339 U. S. 594, 70 S. Ct. 870, 94 L. ed. 1088.

The McKay case affirmed without opinion McInnes v. McKay, 127 Maine 110, 141 A. 699. Under the Maine statute, an attachment was permitted at the time suit was commenced in precisely the manner authorized by our statute for garnishing. The Supreme Court of Maine held that the attachment itself gave notice and an opportunity to be heard in the principal action which satisfied the requirements of due process. The property attached in the McKay case was real estate and corporate stock. The United States Supreme Court in Sniadach suggested that what

was appropriate under a "feudal regime" might not give necessary protection to property today.

The extraordinary situations referred to in the Sniadach decision involved an attachment of a nonresident's property (in Ownbey); the execution on property of bank stockholders (in Coffin); the management of a savings and loan association by a conservator (in Fahey); and the seizure by the government of mislabeled goods without a hearing (in Ewing). We are of the opinion that these cases are not analogous to the garnishment of accounts receivable in an action of the kind before us.

Whether we are governed by the language in Sniadach that "the sole question" is one of procedural due process, or whether, by analogy to the plight of the wage earner, this defendant is entitled to relief from the loss of his sustenance, we are of the opinion and hold that as here applied Minn. St. 1967, §§ 571.41, 571.42, and 571.60, are unconstitutional. We address ourselves to this question with some reluctance because the garnishment statutes which here apply have now been amended by L. 1969, c. 1142. By the terms of the present statute, garnishments are permitted only under substantially the same circumstances as those which authorize attachments under Minn. St. 570.02.[2]

---

[2] Minn. St. 571.41, subd. 2, L. 1969, c. 1142, § 1, subd. 2, provides as follows: "Garnishment shall be permitted before judgment in the following instances only:

"(1) For the purpose of establishing quasi in rem jurisdiction

"(a) when the defendant is a resident individual having departed from the state with intent to defraud his creditors, or to avoid service, or keeps himself concealed therein with like intent; or

"(b) the defendant is a resident individual who has departed from the state, or cannot be found therein, or

"(c) the defendant is a nonresident individual, or a foreign corporation, partnership or association.

"(2) When the garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee may be held to respond to any person for the claim asserted against the debtor in the main action."

We have great difficulty in distinguishing between the impounding of wages without notice and an opportunity to be heard and garnishing accounts receivable under similar conditions. The hardship and injustice stressed in the majority opinion in Sniadach are equally applicable to the laborer, artisan, or merchant, whose livelihood depends on selling customers his services or his goods. It seems to us that the fortuity of a debtor's being self-employed should not insulate a creditor from according the debtor procedural due process. If the wage earner is entitled to prior notice and an opportunity to be heard, no reason occurs to us why the corner grocer, the self-employed mechanic, or the neighborhood shopkeeper should have his income frozen by the garnishment of his accounts receivable prior to the time his liability is established. No rational distinction can be drawn between a livelihood dependent on wages and one derived from the sale of services and goods if the rationale of the Sniadach case is based on the policy of protecting a breadwinner from the harassment of creditors. If, as we have indicated, that decision is premised on the broader constitutional concept of notice and an opportunity to be heard, the rule should apply to the garnishment of all property.

Plaintiff argues that by posting a bond and releasing the garnishments defendant has waived its right to challenge the validity of the statute and has rendered the issue moot. We do not subscribe to that contention. The economic burden which defendant has sustained to achieve this result is one which stems directly from the garnishment proceedings. It inflicts a hardship which is different only in form and not in substance. For the reasons stated, we hold that the garnishment of accounts receivable without prior notice or an opportunity to be heard renders unconstitutional the statutes which are here applicable.

Reversed.